**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANNE NEWBOLD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-9131 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) | **CLASS ACTION COMPLAINT** JURY TRIAL DEMANDED |
| Defendant. | ) | |

## I.      INTRODUCTION

1.      Plaintiff Anne Newbold brings this class action challenging State Farm Mutual Automobile Insurance Company's standardized practice of placing calls to telephones using an automatic telephone dialing system ("ATDS") and/or a prerecorded voice without obtaining prior express consent, to promote its In-Drive auto insurance discount program. These calls violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (TCPA). Such calls are characterized as "robocalls" for purposes of this Complaint.

## II.      JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

3.      This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

4.      This Court has personal jurisdiction over State Farm because the company is

licensed by the State of Illinois to conduct the business of insurance in Illinois, and it conducts the business of insurance in Illinois, and because State Farm's corporate headquarters are located in Illinois. It has the requisite minimum contacts, and has purposefully availed itself of the resources and protection of the State of Illinois.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(d) because State Farm resides in Illinois, and is subject to personal jurisdiction in this District. In addition, class members are located in this District.

### III.     PARTIES

6.     Anne Newbold is a natural person residing in Louisville, Kentucky. Ms. Newbold is the primary user of and the subscriber to the cellular telephone to which State Farm placed robocalls and is a member of the class defined herein. Her cell phone number is on the National Do Not Call Registry.

7.     Ms. Newbold is a "person" as defined by 47 U.S.C. § 153(39).

8.     State Farm is a mutual life insurance company with its principal place of business at One State Farm Plaza, Bloomington, Illinois 61710. State Farm is the largest U.S. home and car insurer, with net income of $3.2 billion in 2012.

9.     State Farm and/or its agents placed robocalls to Ms. Newbold and other class members in violation of the TCPA, as alleged herein.

10.     State Farm is a "person" as defined by 47 U.S.C. § 153(39).

### IV.     THE TCPA AND ITS PURPOSE

11.     Recognizing that unsolicited telemarketing calls are a common nuisance and an unreasonable intrusion on citizens' privacy, more than twenty years ago Congress enacted the Telephone Consumer Protection Act of 1991, or TCPA, to regulate telemarketing. Among other

things, the TCPA prohibits telemarketing calls to persons and entities who list their telephone numbers on the National Do Not Call Registry, prohibits telemarketers from placing unsolicited pre-recorded phone messages, and prohibits calls to cellular phones using autodialers or prerecorded voices, unless the caller has given express written consent to receive such calls.

12.     In enacting the TCPA to regulate the explosive growth of the telemarketing industry, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13.     In 1995, under its authority to adopt rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the telemarketing act, 15 U.S.C. §§ 6101-6108 (2010), the FTC adopted the telemarketing sales rule, 16 C.F.R. § 310 (2010), which was later amended in 2003. Among other things, the amended TSR established a "Do Not Call Registry." The Registry lists the telephone numbers of consumers who have informed the FTC that they do not wish to receive certain types of telemarketing calls. The TCPA prohibits persons or entities from initiating telephone solicitations to registered telephone subscribers. 47 U.S.C. § 227(c) (2010); 47 C.F.R. § 64.1200(c) (2010).

14.     The TCPA prohibits "telemarketing" calls, *i.e.*, calls made to advertise the sale of goods and services, made to residential homes, using a pre-recorded phone message. 47 U.S.C. § 227(b)(1)(B) (2010); 47 C.F.R. § 64.1200 (2010).

15.     It is also a violation of the TCPA to call a person's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice message. 47 U.S.C. § 227(b)(1)(A)(iii) (2010). The only exceptions to this prohibition are in the case of an emergency or with the prior express consent of the called party.

16.     The TCPA places responsibility for violations not only on businesses that place the unlawful calls, but also on businesses on whose behalf the calls are made. 47 U.S.C. § 227 (c)(5) (2010).

17.     In recent years, businesses have increasingly looked to technologies through which to place calls in large volume at low cost. Using a predictive dialer, or ATDS, computer software enables the caller to dial a list of telephone numbers and connects answered calls to agents or representatives. Predictive dialers use statistical algorithms to minimize the time that agents spend waiting between conversations, while minimizing the occurrence of someone answering when no agent is available. This provides savings and efficiency to the caller but annoyance to the user of the cellular phone to which such calls are placed.

18.     Unlike calls placed to land lines, calls made to wireless numbers can actually cost the recipients money, because cell phone users must frequently pay their respective wireless service providers either for each call they receive or incur a usage allocation deduction to their calling plan, regardless of whether or not the call is authorized.

### V.     STATE FARM PLACED CALLS TO MS. NEWBOLD'S AND CLASS MEMBERS' PHONES USING AN ATDS AND/OR A PRERECORDED VOICE

19.     Over the course of an extended period beginning on or about April 2013, State Farm and its agents made non-emergency calls to Ms. Newbold and other class members using an ATDS and a prerecorded voice in an effort to market its "In-Drive" device and its insurance products and services. In the process, State Farm made at least hundreds of calls to the cellular telephones used by Ms. Newbold and other class members throughout the United States.

20.     The calls originated from State Farm's In-Drive call center, an in house State Farm department.

21.     For example, on April 12, 2013 at 1:26 PM, State Farm placed a call to Ms.

- 4 -

Newbold's cellular telephone using an ATDS from (888) 665-9901 with the commercial purpose of offering her products or services.

22.     On one call made to Ms. Newbold that she answered, the call began with an artificial or prerecorded voice making a non-personalized sales pitch. For example, the call from (888) 665-9901 that Ms. Newbold answered on April 12, 2013 began with a recorded voice that referenced State Farm's In-Drive program and said: "We are calling about the device we sent you. Press 1 to be connected to a representative."

23.     There are numerous entries on the Internet sites set up to collect and share complaints about unwanted telemarketing calls regarding similar calls from the same number regarding State Farm's In-Drive program.  Examples of such entries about (888) 665-9901 include:

- "It's a (sic) automatic call from State Farm..."(http://800notes.com/Phone.aspx/1-888-665-9901)
- "...they launch into a standard robo-call ad, 'Our Auto-insurance package has A, B, C (sic) features and super low prices!.' Cold-calling robo callers hawking Automobile insurance..." (*id*).
- "It's a (sic) automatic call from State Farm I hate automatic calls" (*id*).

24.     These and other comments are indicative of State Farm's aggressive robocalling operations.

25.     The purpose of State Farm's robocall to Ms. Newbold was to connect her to State Farm's "In-Drive Account Center," which is a call center designed to sell consumers State Farm's "In-Drive" devices and insurance products and services. The "In-Drive" device and associated programs are described on a website maintained by State Farm at www.in-drive.com/sf/.

26.     The "In-Drive Communicator," the basic hardware of the "In-Drive" program, is a measurement and communication device designed by Hughes Telematics, Inc. (acquired by

- 5 -

Verizon Telematics in 2012) and offered by State Farm to its customers. The device's primary function is to gather and upload driver behavior data, e.g., data about acceleration, braking, speed, and location to a centralized location for processing and storage. According to marketing literature published by State Farm, "[t]his device collects your driving statistics so you can earn auto insurance discounts." *See* State Farm In-Drive Frequently Asked Questions, attached hereto as Exhibit A at p. 1.

27.     State Farm represents that insurance discounts "are applied as soon as you enroll" in the In-Drive program, that the savings "will apply to your premiums for Bodily Injury and Property Damage Liability, Medical Payments, (PIP in some states), Comprehensive, and Collision Coverages," and that participation in the program "could result in savings up to 50%." Exhibit A at p. 1.

28.     The In-Drive Communicator is a device that plugs into an automobile's on-board diagnostic port (usually located underneath the vehicle's dashboard, near the bottom of the steering column). *Id*. The device collects driving statistics such as speed, time of day, miles driven, acceleration, braking, left turns and right turns and sends those statistics to the In-Drive system. Exhibit A at 3, 6. That information is then used to calculate the applicable discount.

29.     Ms. Newbold never provided her cell phone number or consented to receive cell phone calls, or other calls from State Farm or its agents. Ms. Newbold is not a State Farm policy holder.

## VI.     CLASS ACTION ALLEGATIONS

30.     This action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), as set forth below.

31.     Class Definition. Ms. Newbold brings this action individually and on behalf of the

following class of similarly situated persons (the "Class"):

> All persons in the United States to whom State Farm, or its affiliated companies or agents made a call: mentioning its In-Drive program using an ATDS or an artificial or prerecorded voice to such person's cell phone, or marketing In-Drive using an artificial or prerecorded voice to a residential telephone line used by such person.

32.     Excluded from the Class are State Farm and any of its officers, directors or employees, Class counsel, the presiding judge, named plaintiffs in any substantially similar actions and members of their immediate families. Ms. Newbold hereby reserves her right to amend the above class definition based on discovery and the proofs at trial.

33.     The Class as defined above is identifiable by phone records and phone number databases used by State Farm or its agents in transmitting its unsolicited prerecorded telemarketing calls.

34.     Numerosity. The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable. Ms. Newbold believes that there are at least several thousand persons in the Class. The exact number and identity of Class members is unknown to Ms. Newbold at this time and can only be ascertained from information and records in the possession, custody or control of State Farm.

35.     Commonality. There are questions of law or fact common to the Class including, *inter alia*, the following:

a.      Whether the telephone calls described herein were placed by State Farm or by someone on acting on its behalf;

b.      Whether the telephone calls described herein were made using an ATDS;

c.      Whether the telephone calls described above were made using a prerecorded voice;

d.      Whether the telephone calls described above were telemarketing calls;

e. Whether State Farm maintains records of express consent to receive the telephone calls described herein;

f. Whether the above-described records, if any, constitute express consent within the meaning of the TCPA;

g. The number of telephone calls made to Ms. Newbold and other Class members and the statutory measure of damages;

h. Whether the conduct of State Farm alleged herein violated the TCPA;

i. Whether the conduct alleged herein was knowing or willful within the meaning of the statute; and

j. Whether Ms. Newbold and the members of the Class are entitled to the damages, equitable, injunctive and other relief sought herein.

36. Typicality. The claims of Ms. Newbold are typical of the claims of the Class alleged herein. Ms. Newbold and other members of the Class are all persons to whom State Farm, or its affiliated companies or agents thereof made one or more non-emergency calls to cellular telephones used by them without their express consent.

37. Adequacy. Ms. Newbold will fairly and adequately protect the interests of the Class. Ms. Newbold has retained counsel who are competent and experienced in the prosecution of complex and class action litigation. The interests of Ms. Newbold are aligned with, and not antagonistic to, those of the Class.

38. Fed. R. Civ. P. 23(b)(2) Requirements. The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as State Farm has acted or has refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

39.     State Farm's actions are generally applicable to the Class as a whole, and Ms. Newbold seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

40.     State Farm's alleged uniform common course of conduct makes declaratory relief with respect to the Class as a whole appropriate.

41.     Fed. R. Civ. P. 23(b)(3) Requirements. This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

42.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

43.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## VII.    CAUSES OF ACTION

### COUNT I

### Violation Of The TCPA By Making Calls To Cell Phones Using An ATDS Or A Prerecorded Voice

44.     Ms. Newbold incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

45.     Notwithstanding the fact that they did not give their express consent to be called, State Farm made non-emergency telephone calls to the cellular telephones, as specified in 47 U.S.C. § 227(b)(1)(A)(iii), of Ms. Newbold and other Class members.

46.     The calls made by State Farm to the cellular telephones used by Ms. Newbold and

the class were made using an "automatic telephone dialing system," or "ATDS", as defined by 47 U.S.C. § 227(a)(1), which had the capacity to store and produce random telephone numbers.

47.     Direct evidence of State Farm's use of an ATDS is within the sole possession of State Farm at this stage, and will therefore only come to light once discovery has been undertaken. Nonetheless, a reasonable inference can be drawn that the calls described herein were delivered by an ATDS based on: the generic content of the calls; the impersonal advertising content of the message delivered; the fact that the call content was prerecorded; the fact that State Farm had no reason to contact Ms. Newbold.

48.     The complained of calls were not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i). They had a commercial purpose.

49.     Ms. Newbold did not provide "express consent" allowing State Farm to place telephone calls to her cellular phone or calls placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

50.     The foregoing acts and omissions of State Farm constitute negligent violations of the TCPA and applicable FCC Regulations, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq.*

51.     As a result of State Farm's negligent violations of 47 U.S.C. § 227, *et seq.*, Ms. Newbold and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

52.     Ms. Newbold and Class members are also entitled to injunctive relief prohibiting future violations of the TCPA by State Farm.

## COUNT II

### Violation Of The TCPA By Making Telemarketing Calls To A Residential Telephone Line Using A Prerecorded Voice

53.     Ms. Newbold incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

54.     Notwithstanding the fact that they did not give their express consent to be called, State Farm made non-emergency telephone calls to the residential telephone lines, as specified in 47 U.S.C. § 227(b)(1)(B), of Ms. Newbold and other Class members.

55.     The calls made by State Farm to the residential telephone lines used by Ms. Newbold and the Class were made using an "artificial voice or prerecorded voice" to deliver a message, as specified by 47 U.S.C. § 227(b)(1)(B).

56.     Ms. Newbold and members of the Class did not provide "express consent" allowing State Farm to place telephone calls to their residential telephone line or calls placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(B).

57.     The foregoing acts and omissions of State Farm constitute negligent violations of the TCPA and applicable FCC Regulations, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq.*

58.     As a result of State Farm's negligent violations of 47 U.S.C. § 227, *et seq.*, Ms. Newbold and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

59.     Ms. Newbold and Class members are also entitled to injunctive relief prohibiting future violations of the TCPA by State Farm.

## COUNT III

### Willful Or Knowing Violation Of The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

60.     Ms. Newbold incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

61.     The conduct described above at paragraphs 19 – 52 also constitutes willful and knowing violations of the provisions of 47 U.S.C. § 227, *et seq.*

62.     As a result of State Farm's willful and knowing violations of 47 U.S.C. § 227, *et seq.*, Ms. Newbold and Class members are entitled to an award of $1,500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

63.     Ms. Newbold and Class members are also entitled to injunctive relief prohibiting State Farm's violation of the TCPA in the future.

### VIII.   PRAYER FOR RELIEF

WHEREFORE, Ms. Newbold prays for an order and judgment against State Farm as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(b)(2) and (b)(3), and certifying the Class defined herein;

B.     Designating Ms. Newbold as representative of the Class and her undersigned counsel as Class counsel;

C.     Awarding Ms. Newbold and the Class statutory damages in the amount of $500.00 per violation of 47 U.S.C. § 227(b)(1)(A) and (B) and allowable interest thereon;

D.     Awarding Ms. Newbold and the Class statutory damages in the amount of $1,500.00 per willful or knowing violation of 47 U.S.C. § 227(b)(1)(A) and (B) and allowable interest thereon;

- 12 -

E.     Enjoining State Farm from further violating 47 U.S.C. § 227(b)(1)(A) and (B);

F.     Awarding Ms. Newbold and the Class their attorneys' fees and unreimbursed

costs and expenses; and

G.     Granting such other and further relief as the Court deems just.

## IX.     JURY DEMAND

Ms. Newbold hereby demands a trial by jury on all issues so triable.

Dated: December 20, 2013                         Respectfully submitted,

**BAILEY & GLASSER LLP**                         **BAILEY & GLASSER LLP**

Elizabeth Ryan (*pro hac vice to be filed*)      */s/ Elizabeth Hoskins Dow* (BBO # 6216262)
John Roddy (*pro hac vice to be filed*)          3601 McDonough Street
125 Summer Street, Suite 1030                    Joliet, IL 60431
Boston MA, 02110                                 Telephone: 815-730-8213
Telephone: 617-439-6730                          Facsimile: 304-342-1110
Facsimile: 617- 951-3954                         ldow@baileyglasser.com
eryan@baileyglasser.com
jroddy@baileyglasser.com

**PASTOR LAW OFFICE, LLP**                       **LEONARD LAW OFFICE, LLP**

David Pastor                                     Preston W. Leonard
63 Atlantic Avenue, 3d Floor                     139 Charles St. Suite A121
Boston, MA 02110                                 Boston MA, 02114
Telephone: 617-742-9700                          Telephone: 617 595-3640
Facsimile: 617-742-9701                          pleonard@theleonardlawoffice.com
dpastor@pastorlawoffice.com

*Counsel for Plaintiff and the Class*

- 13 -